**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FREEDOM FROM RELIGION
FOUNDATION, INC., et al.,

    Plaintiffs,

vs.

CITY OF WARREN, et al.,

    Defendants.

_____/

Case No. 11-cv-15617

Hon. Lawrence P. Zatkoff

*AMICUS CURIAE* **BRIEF**

**OF THE AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN**

Daniel S. Korobkin (P72842)
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
msteinberg@aclumich.org

Christopher C. Lund*
Cooperating Attorney, American Civil
  Liberties Union Fund of Michigan
Wayne State University Law School
471 West Palmer St.
Detroit, MI 48202
(313) 577-4046
lund@wayne.edu

* licensed in Pennsylvania and cosigning
  pursuant to E.D. Mich. L.R. 83.20(i)(1)(E)

## TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................................ iii

INTEREST OF *AMICUS CURIAE* ..................................................................................... v

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.      The Rules Relating to Public Forums ........................................................... 1

    II.     This Case Involves Viewpoint Discrimination, Which Is Unconstitutional Regardless of the Forum Type. ..................................................................... 3

    III.    Even If Warren Could Constitutionally Create a Limited Public Forum for Religious Displays, FFRF's Display Cannot Be Excluded Because It *Is* a Religious Display. ......................................................................................... 8

CONCLUSION .................................................................................................................. 10

# INDEX OF AUTHORITIES

**Cases**

*Capitol Square v. Pinette*, 515 U.S. 753 (1995) ................................................................. 5, 6

*Christian Legal Soc'y v. Martinez*, __ U.S. __, 130 S. Ct. 2971 (2010) ........................................ 1

*City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750 (1988) ............................................. 3

*County of Allegheny v. ACLU*, 492 U.S. 573 (1989) ...................................................................... 8

*EEOC v. Townley Engineering & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988) .................................... 9

*Epperson v. Arkansas*, 393 U.S. 97 (1968) .................................................................................... 8

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978) ....................................................... 1, 7

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ................................................... 2

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001) .................................................. 4, 5, 6

*Helms v. Zubaty*, 495 F.3d 252 (6th Cir. 2007) ............................................................................. 2

*Kaufman v. Karlen*, 270 F. App'x 442 (7th Cir. 2008) ................................................................. 9

*Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005) ............................................................... 9

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993) .............................. 4

*Lee v. Weisman*, 505 U.S. 577 (1992) ........................................................................................... 6

*Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 7
    429 U.S. 167 (1976) ................................................................................................................. 7

*McCreary County v. ACLU of Ky.*, 545 U.S. 844 (2005) .............................................................. 6

*Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010) ....................................................... 2, 9

*Oberwetter v. Hilliard*, 639 F.3d 545 (D.C. Cir. 2011) ................................................................ 2

*Osediacz v. City of Cranston*, 344 F. Supp. 2d 799 (D.R.I. 2004) ............................................... 3

*Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny County*,
    653 F.3d 290 (3d Cir. 2011) .................................................................................................... 8

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) ................................................................ 1

*Putnam Pit, Inc. v. City of Cookeville*, 221 F.3d 834 (6th Cir. 2000) ........................................... 3

*Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) ................................. 4, 5, 9

*Texas v. Johnson*, 491 U.S. 397 (1989) ................................................................................... 7

*Torcaso v. Watkins*, 367 U.S. 488 (1961) ................................................................................ 8

*United Food & Commercial Workers Union v. Sw. Ohio Reg'l Transit Auth.*,
 163 F.3d 341 (6th Cir. 1998) ............................................................................................. 2, 7

*Wallace v. Jaffree*, 472 U.S. 38 (1985) ..................................................................................... 8

*Widmar v. Vincent*, 454 U.S. 263 (1981) .................................................................................. 4

*Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140 (5th Cir. 1975) ................................................. 9

**Other Authorities**

*EEOC Compliance Manual, Religious Discrimination* (2008),
 available at http://www.eeoc.gov/policy/docs/religion.htm .................................................. 9

Robert C. Post, *Subsidized Speech*, 106 Yale L.J. 151 (1996) .................................................. 3

## INTEREST OF *AMICUS CURIAE*

The American Civil Liberties Union of Michigan is the Michigan affiliate of a nationwide nonpartisan organization of over 500,000 members dedicated to protecting the civil rights and civil liberties protected by the United States Constitution. The ACLU Fund of Michigan is the educational and legal arm of the Michigan affiliate. The ACLU has a long history of participating in litigation and education concerning the scope of rights protected by the First Amendment, including the rights to free speech and religious liberty.

This case raises important First Amendment questions regarding the rights of atheists to express their beliefs (or non-belief) on public property. As an organization that has long been committed to preserving the rights to free speech and religious liberty, the ACLU has a strong interest in the proper resolution of this case. *Amicus* believes its perspective on these questions will be of value to the court, and the parties have stipulated to the filing of this brief.

**INTRODUCTION**

"The First Amendment is plainly offended," warns the Supreme Court, when governments "give one side of a debatable public question an advantage in expressing [their] views to the people." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 785-86 (1978). This is precisely what has happened here. Maybe the most disputed theological issues of our time is the existence of God. Religious believers say there is a God; nonbelievers deny it. The City of Warren cannot open up a piece of government property for one side but not the other. That is the most flagrant kind of viewpoint discrimination. And it is unconstitutional, regardless of the type of forum present here.

**ARGUMENT**

I.   **The Rules Relating to Public Forums**

Given the nature of this case, *amicus* begins with some basics about public forums:

> In conducting forum analysis, our decisions have sorted government property into three categories. First, in *traditional public forums*, such as public streets and parks, any restriction based on the content of speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest. Second, governmental entities create *designated public forums* when government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose; speech restrictions in such a forum are subject to the same strict scrutiny as restrictions in a traditional public forum. Third, governmental entities establish *limited public forums* by opening property limited to use by certain groups or dedicated solely to the discussion of certain subjects . . . In such a forum, a governmental entity may impose restrictions on speech that are reasonable and viewpoint-neutral.

*Christian Legal Soc'y v. Martinez*, __ U.S. __, 130 S. Ct. 2971, 2984 n.11 (2010) (emphasis added, but citations and quotations omitted); *see also Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009).

In addition to these three categories, the Sixth Circuit now recognizes a fourth—the nonpublic forum—which includes "publicly-owned property that is not by tradition or governmental designation a forum for public communication." *Miller v. City of Cincinnati*, 622 F.3d 524, 535 (6th Cir. 2010) (citations and quotations omitted). Although limited public forums and nonpublic forums differ somewhat in how they are created, courts in this circuit apply the same law to both: "[G]overnment limitations on speech in both a limited public forum and a nonpublic forum receive the same level of scrutiny. In both instances, any restrictions must be reasonable and viewpoint neutral." *Id*. at 535-36 (citations and quotations omitted).[1]

Aside from these substantive requirements, the Free Speech Clause also requires certain procedural safeguards. "[A] statute or ordinance offends the First Amendment when it grants a public official 'unbridled discretion' such that the official's decision to limit speech is not constrained by objective criteria, but may rest on ambiguous and subjective reasons." *United Food & Commercial Workers Union v. Sw. Ohio Reg'l Transit Auth*., 163 F.3d 341, 359 (6th Cir. 1998) (citations and quotations omitted). Such procedural defects, the Supreme Court has warned, are themselves unconstitutional—separate and apart from any issues of content or viewpoint discrimination. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130-33 (1992) (striking down a county ordinance for giving unbridled discretion to an administrator in

---

[1] The Sixth Circuit recently modified these categories, in response to the Supreme Court's decisions in *Martinez* and *Summum*. The Sixth Circuit used to recognize just "three types of fora: the traditional public forum, the designated public forum, and the nonpublic forum." *Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007). But the old "designated public forum" category relied on in *Helms* has apparently now been split into two—a new "designated public forum" category that involves government property opened up for all possible speech uses and a new "limited public forum" category that involves government property opened up for particular uses chosen by the government. *See Miller*, 622 F.3d at 535-36. Other circuits continue to apply the tripartite scheme recognized in *Helms*. *See, e.g., Oberwetter v. Hilliard*, 639 F.3d 545, 551-52 (D.C. Cir. 2011) (using only three categories—the traditional public forum, the limited/designated public forum, and the nonpublic forum).

2

whether to award parade permits); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757-59 (1988) (striking down a city ordinance for giving unbridled discretion to the mayor in whether to let various private newspapers into public news racks).[2]

## II. This Case Involves Viewpoint Discrimination, Which Is Unconstitutional Regardless of the Forum Type.

*Amicus* leaves it to the parties to debate the nature of this forum, because ultimately nothing should turn on that question. Viewpoint discrimination is always unconstitutional, regardless of the forum type. *See Putnam Pit, Inc. v. City of Cookeville*, 221 F.3d 834, 845 (6th Cir. 2000) ("In both designated public fora and nonpublic fora, the government may not discriminate based upon the viewpoint of the speaker."); Robert C. Post, *Subsidized Speech*, 106 Yale L.J. 151, 170 (1996) (explaining how "the Court's own precedents [establish] that viewpoint discrimination is always and everywhere unconstitutional"). The real question in this case therefore is whether the City of Warren has engaged in viewpoint discrimination. *Amicus* believes it clear beyond dispute that it has done so.

Facts do not often come much clearer than this. Warren here excluded plaintiffs' display because of its atheistic tone. The Mayor said as much. *See* Pls.' Compl. at 7 (noting how Mayor Fouts openly claimed that the plaintiff's display was excluded because it "is clearly anti-religious in tone and meant to counter the religious tone of the Nativity Scene"). Warren insists that this is somehow not viewpoint discrimination. Although its argument is a bit hard to follow, Warren seems to contend that it can create a forum for religion—a place where all religious views are equally welcome, but atheistic and other nonreligious views are properly rejected. *See* Defs.' Br.

---

[2] To offer an example that comes particularly close to the facts of this case, a federal district court in Rhode Island once struck down a city policy allowing holiday displays on the front lawn of city hall, because the policy "vest[ed] unbridled discretion in Mayor Laffey to permit or deny individual displays." *Osediacz v. City of Cranston*, 344 F. Supp. 2d 799, 811 (D.R.I. 2004).

in Supp. of Mot. for Summ. J. at 17-22.  Yet this whole line of argument is premised on a deep misunderstanding of the public forum doctrine.  And a long chain of well-established Supreme Court cases demonstrates its illegitimacy.

Over the past thirty years, the United States Supreme Court has repeatedly confronted state and local governments trying to exclude religious groups from public property made generally available to other groups.  In every such case, the Court has struck down the exclusion as unconstitutional viewpoint discrimination.  *See Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384 (1993); *Widmar v. Vincent*, 454 U.S. 263 (1981).

The first case was *Widmar v. Vincent*, where the University of Missouri opened up its student center on a first-come, first-served basis to student organizations but refused to let religious groups use the space for religious activities.  This, the Court held, was unconstitutional viewpoint discrimination: The government cannot "discriminate[] against student groups and speakers based on their desire to . . . engage in religious worship and discussion." *Widmar*, 454 U.S. at 269.  Next was *Lamb's Chapel*, where a school district allowed private groups to use school facilities after hours, but only so long as they did not use the property for religious purposes.  Unconstitutional, the Court said—a school district cannot deny access simply because "the presentation would have been from a religious perspective." *Lamb's Chapel*, 508 U.S. at 393-94.  A few years later in *Rosenberger*, the Court struck down a policy of the University of Virginia that denied funding to a Christian magazine because of its religious nature.  This too was viewpoint discrimination.  *See Rosenberger*, 515 U.S. at 831.  And finally, in *Good News Club*, a local school district excluded a Christian student club from meeting on elementary

4

school property after school. "[T]he exclusion of the Club on the basis of its religious perspective," the Court explained, "constitutes unconstitutional viewpoint discrimination." *Good News Club*, 533 U.S. at 108 n.2.

All these cases stand for a very simple principle. Religious individuals and groups cannot be denied access to government property when that property is available to nonreligious individuals and groups. That is viewpoint discrimination, pure and simple. But this coin has two sides. If preferring nonreligious groups over religious ones is viewpoint discrimination, then preferring religious groups over nonreligious ones must also be viewpoint discrimination. This is logic at its most basic—if it violates equality to treat religious speech worse than secular speech, then it also must violate equality to treat it better.[3]

The Supreme Court said this directly in *Capitol Square v. Pinette*, 515 U.S. 753 (1995), a case coming out of the *Good News Club* line of cases. In *Pinette*, Ohio had kept the Klan from putting up a cross on a piece of public property made generally available to other groups. Ohio excluded the Klan not because the Klan was racist, but because its cross was religious; Ohio believed that allowing it would violate the Establishment Clause. *Id*. at 759. The Supreme Court

---

[3] Another point comes in here as well. In the *Good News* line of cases, the government frequently argued that it was not discriminating against religious viewpoints but simply excluding religion as an appropriate *subject matter* for the forum. Although lower courts sometimes accepted that argument, the Supreme Court always rejected it. *See Good News Club*, 533 U.S. at 104-05 (noting that the district court and Second Circuit had accepted the government's claim that this was only a subject-matter exclusion rather than viewpoint discrimination, but then rejecting it); *Rosenberger*, 515 U.S. at 831 (concluding that "viewpoint discrimination is the proper way to interpret the University's objections to Wide Awake" even though the University had argued it was just excluding religion as a subject matter).

Warren could possibly make a similar argument here; it could argue that it has not engaged in viewpoint discrimination but simply defined the "subject matter" of the forum in terms of religion. But, as explained above, that still violates the central principle of the *Good News* line of cases—the government cannot define the subject matter of the forum in terms of religion, whether to exclude religion altogether or to insist that all speech in the forum be religious. It is viewpoint discrimination either way.

5

rejected that and gave the Klan the right to put up its cross. And in his opinion for a plurality of the Court, Justice Scalia made it clear that equality was a two-way street. Equality protected religious groups from being disfavored, but it simultaneously prohibited them from being favored:

> Of course, giving sectarian religious speech preferential access to a forum close to the seat of government (or anywhere else for that matter) would violate the Establishment Clause (as well as the Free Speech Clause, since it would involve content discrimination). And one can conceive of a case in which a governmental entity manipulates its administration of a public forum close to the seat of government (or within a government building) in such a manner that only certain religious groups take advantage of it, creating an impression of endorsement that is in fact accurate. But those situations, which involve governmental favoritism, do not exist here.

*Pinette*, 515 U.S. at 766.

Indeed, the notion that the government cannot discriminate between religious and nonreligious speakers is so fundamental that it is defended vigorously even by those who believe that the government should itself promote religion. Justice Scalia has often argued for government sponsorship of religion, usually in dissent. *See McCreary County v. ACLU of Ky.*, 545 U.S. 844, 885 (2005) (Scalia, J., dissenting) (arguing that the government can and should put up Ten Commandments displays); *Lee v. Weisman*, 505 U.S. 577, 631 (1992) (Scalia, J., dissenting) (arguing that the government can and should organize prayers at public school graduations). But even Justice Scalia would not hesitate to strike down what Warren has done here. *See Pinette*, *supra*; *see also Good News Club*, 533 U.S. at 121 (Scalia, J., concurring) ("Religious expression cannot violate the Establishment Clause [when it is allowed] in a limited public forum, publicly announced, *whose boundaries are not drawn to favor religious groups*." (emphasis added)).

6

All this fits well with what must be the basic point of the viewpoint-discrimination principle in the first place—preventing the government from skewing debate on important societal issues. "Especially where, as here, the legislature's suppression of speech suggests an attempt to give one side of a debatable public question an advantage in expressing its views to the people, the First Amendment is plainly offended." *First Nat'l Bank of Boston*, 435 U.S. at 785-86. In our time, the most disputed theological issue is the existence of God. Theists claim there is a God; atheists deny it. The Free Speech Clause bars Warren from setting aside a piece of public property for one side but not the other. *See Madison Joint School Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175-76 (1976) ("To permit one side of a debatable public question to have a monopoly in expressing its views . . . is the antithesis of constitutional guarantees.").

Of course, Freedom from Religion Foundation ("FFRF") is not just an atheistic organization—they sometimes almost seem to go out of their way to make their ideas sound offensive or disagreeable. But "[i]f there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). Consequently, just as the viewpoint neutrality rule prohibits the state from favoring religious views over nonreligious views, it also prohibits the state from favoring mundane or noncontroversial views *about* religion over provocative or controversial views about religion. *See United Food*, 163 F.3d at 361-62 ("[A]ny prohibition against 'controversial' advertisements unquestionably allows for viewpoint discrimination. . . . A viewpoint challenging the beliefs of a significant segment of the public . . . frequently will generate discord. Thus, an ad's controversy often is inseparable from the viewpoint it conveys."); *see also Pittsburgh League of Young*

7

*Voters Educ. Fund v. Port Auth. of Allegheny County*, 653 F.3d 290, 296 (3d Cir. 2011) ("[I]f the government allows speech on a certain subject, it must accept all viewpoints on the subject, even those that it disfavors or that are unpopular." (citation omitted)).

### III.     Even If Warren Could Constitutionally Create a Limited Public Forum for Religious Displays, FFRF's Display Cannot Be Excluded Because It *Is* a Religious Display.

*Amicus* closes with a final point that neither party is likely to address.  Both sides here probably think of the plaintiff as being outside of the category called religion.  Warren has created this forum for religious displays.  It does not want to include plaintiffs' atheistic display; it must perforce insist that atheism is not a religion.  On the other side, FFRF does not want to be called religious either; as its billboard so enthusiastically explains, FFRF sees religion as nothing but myth and superstition.

But for First Amendment purposes, the Supreme Court has made it clear that atheism must be treated as a religion.  Fifty years ago, the Court made this clear in *Torcaso v. Watkins*, 367 U.S. 488 (1961), when it held that Maryland could not force an atheist to swear a belief in God as a condition of assuming his office as a notary public.  Atheism was treated like a religion for purposes of the Religion Clauses; atheists were free to invoke both the Free Exercise and Establishment Clauses.  And since *Torcaso*, the Court has never backtracked on the idea that atheists too are equally entitled to religious liberty.  *See, e.g., County of Allegheny v. ACLU*, 492 U.S. 573, 590 (1989) ("Perhaps in the early days of the Republic [the words of the First Amendment] were understood to protect only the diversity within Christianity, but today they are recognized as guaranteeing religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian faith such as Islam or Judaism."); *Wallace v. Jaffree*, 472 U.S. 38, 53 (1985) ("[T]he individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all."); *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)

8

("The First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion."). Courts let atheists sue under the Free Exercise Clause, *see Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005), and under religious-liberty legislation like the Religious Land Use and Institutionalized Persons Act, *see Kaufman v. Karlen*, 270 F. App'x 442 (7th Cir. 2008).

And it has to be this way. If atheism were not treated as a religion, the state could affirmatively promote it. The public schools could teach atheism as true to our kindergarteners; the Establishment Clause would simply not apply. Atheists could be fired from their jobs without it being "religious" discrimination. *But see EEOC Compliance Manual, Religious Discrimination* § 12, at 7 (2008), *available at* [http://www.eeoc.gov/policy/docs/religion.html#\_ftnref6](http://www.eeoc.gov/policy/docs/religion.html#_ftnref6) ("The prohibition on discrimination and the requirement of reasonable accommodation . . . also extend to those who profess no religious beliefs."); *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140 (5th Cir. 1975) (allowing an atheist to sue for religious discrimination claim under Title VII); *EEOC v. Townley Engineering & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988) (same).

Given all this, for the purposes of this case, FFRF must be considered a religious organization and its display must be considered religious as well. FFRF's display therefore falls within the criteria set out by Warren for holiday displays in the atrium of its municipal building, and Warren had no discretion to exclude it. *See, e.g.*, *Miller*, 622 F.3d at 539-40 (holding it unconstitutional for a city to empower itself to exclude speech from a forum when it satisfied the criteria laid out in the city's administrative regulations); *Rosenberger*, 515 U.S. at 829 ("Once it has opened a limited forum . . . the State must respect the lawful boundaries it has itself set.").

## CONCLUSION

Imagine Warren permitted FFRF to post its atheistic display inside of Warren's municipal building but barred the crèche put up by the Warren Rotary Club. Such action would be the most flagrant sort of viewpoint discrimination. Any court would swiftly and rightly put an end to it. This case differs only in ways that the Constitution deems irrelevant. The defendants' motion for summary judgment should be denied.

          Respectfully submitted,

          /s/ Daniel S. Korobkin
          Daniel S. Korobkin (P72842)
          Michael J. Steinberg (P43085)
          Kary L. Moss (P49759)
          American Civil Liberties Union
            Fund of Michigan
          2966 Woodward Ave.
          Detroit, MI 48201
          (313) 578-6824
          dkorobkin@aclumich.org
          msteinberg@aclumich.org

          /s/ Christopher C. Lund
          Christopher C. Lund*
          Cooperating Attorney, American Civil
            Liberties Union Fund of Michigan
          Wayne State University Law School
          471 West Palmer St.
          Detroit, MI 48202
          (313) 577-4046
          lund@wayne.edu

          * licensed in Pennsylvania and cosigning pursuant
            to E.D. Mich. L.R. 83.20(i)(1)(E)

Dated: February 21, 2012

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to:

| | |
|---|---|
| **Raechel M. Badalamenti** | rbadalamenti@kirkandhuth.com |
| | shurley@kirkandhuth.com |
| **Jennifer A. Dukarski** | dukarski@butzel.com |
| **Danielle J. Hessell** | hessell@butzel.com |
| | larson@butzel.com |
| **Robert S. Huth, Jr.** | rhuth@kirkandhuth.com |
| | rbadalamenti@kirkandhuth.com |
| **Daniel S. Korobkin** | dkorobkin@aclumich.org |

                                             /s/ Daniel S. Korobkin
                                             Daniel S. Korobkin (P72842)